UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOVON SCOTT, M-09478, | ) | |
| | ) | |
| Petitioner, | ) | No. 18 C 06913 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| STEPHANIE DORETHY, Warden, | ) | |
| Hill Correctional Center, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* petitioner Jovon Scott seeks a writ of habeas corpus, 28 U.S.C. § 2254,[1] challenging two convictions for aggravated battery with a firearm, as well as the resulting 30-year sentence. His petition asserts three claims for relief: one claim that the state trial court should have held an evidentiary hearing under the Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq*.; and two claims of ineffective assistance of counsel. R. 1, Habeas Pet.[2] But Scott failed to exhaust the claim as to the evidentiary hearing, as well as one of the ineffective-assistance claims. And it is now too late to do so, resulting in procedural default of those claims. On the remaining ineffective-assistance claim for misadvice during plea discussions, the state courts reasonably held that Scott failed to show that the allegedly defective performance prejudiced him. So the habeas petition is denied, and no certificate of appealability shall issue.

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 2241.
[2]Citations to the docket are noted as "R.," followed by the docket entry.

## I. Background

When considering habeas petitions, federal courts must presume that the factual findings made by the last state court to decide the case on the merits are correct, unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Because Scott has not presented clear and convincing evidence to rebut this presumption, this Court adopts the facts set forth by the Illinois Appellate Court on direct review.

### A. Facts

On the afternoon of October 26, 2007, Joseph Rice and Lloyd Johnson were at the home of Rice's girlfriend, LaShanda Davis, when they were both shot. R. 22-15, St. Ct. Rec., Exh. O, Trial Report, Vol. 1, at 114, 116, 120, 123; R. 22-10, St. Ct. Rec., Exh. J, Postconviction Appeal Order ¶¶ 7-8. At the time of the shooting, Rice was on the front porch and Johnson was inside the house with Davis and her daughter, Darneisha Moore. Trial Report, Vol. 1, at 117-20; Postconviction Appeal Order ¶ 8. Both Rice and Moore later identified Jovon Scott, their neighbor, as the shooter. Trial Report, Vol. 1, at 120, 124, 153, 159; Postconviction Appeal Order ¶¶ 8-9. Specifically, they testified that Scott approached the front of the house, stood at the foot of the stairs, got into a verbal altercation with Rice, drew a gun from inside his jacket, and fired multiple shots at Rice. Trial Report, Vol. 1, at 118, 120, 151-54; Postconviction Appeal Order ¶¶ 8-9. As Rice retreated into the house, one of the bullets struck him in the leg. Trial Report, Vol. 1, at 120-21, 154; Postconviction Appeal Order ¶¶ 8-9. Another struck Johnson near the base of the spine, paralyzing him. Trial Report, Vol.

1, at 123; R. 22-16, St. Ct. Rec., Exh. P, Trial Report, Vol. 2, at 4-5; Postconviction Appeal Order ¶¶ 8-9. Scott would later testify that, although he did have an argument with Rice that morning, Scott was playing basketball at a nearby high school when the shooting occurred. Trial Report, Vol. 2 at 17-18, 24, 26-27; Postconviction Appeal Order ¶ 10. After learning that the police were looking to question him, Scott went to the police station, where he was arrested. Trial Report, Vol. 1, at 3, 18; Postconviction Appeal Order ¶ 10.

## B. Procedural History

### 1. Trial & Direct Appeal

#### a. Trial

After the arrest, Scott was charged with attempted first-degree murder, aggravated battery with a firearm, aggravated discharge of a firearm, and aggravated battery. R. 22-13, St. Ct. Rec., Exh. M, Trial Common Law Record, at 27-42. Scott pleaded not guilty and went to trial. Trial Report, Vol. 1 at 35. In September 2009, following a bench trial, Scott was acquitted of the attempted murder of Johnson but found guilty on all other counts in the indictment, including the attempted murder of Rice. Trial Report, Vol. 2 at 55-56.

Two months later, in November 2009, Scott filed a motion asking the trial court either to reconsider the guilty verdict or to order a new trial. Trial Common Law Record at 52. Pointing to the lack of physical evidence, Scott argued that (a) the State had failed to prove its case, particularly that he had the intent to kill Joseph Rice; (b) the court made several errors; and (c) the testimony of the State's witnesses was not

3

credible. *Id.* at 52-53. The state court granted Scott's motion as to the lack of proof of intent to kill Rice but denied the rest of the motions. Trial Report, Vol. 2 at 64. Scott was given consecutive sentences of six years for the aggravated battery of Rice and 24 years for the aggravated battery of Johnson, as well as two concurrent sentences of 10 years each for aggravated discharge of a firearm. *Id.* at 80-81.

In mid-November 2009, Scott asked the trial court to reduce his sentence, which he considered excessive and unnecessary. Trial Common Law Record at 86. Scott argued that he lacked intent to injure Johnson, was unlikely to be a repeat offender, and was a good candidate for rehabilitation. *Id.* at 86-87. The motion was denied. Trial Report, Vol. 2 at 86.

### b. Illinois Appellate Court

Scott appealed the convictions and sentences and received an appointed appellate counsel. Trial Common Law Record at 90-91; Trial Report, Vol. 2 at 86. In the appeal, Scott argued that trial counsel was ineffective for failing to impeach the State's witnesses. R. 22-1, St. Ct. Rec., Exh. A, Pet.'s Br. On September 9, 2011, the Illinois Appellate Court affirmed the judgment of the trial court. R. 22-14, St. Ct. Rec., Exh. N, Postconviction Common Law Record, at 19, 26.

### c. Illinois Supreme Court

In February 2012, Scott filed a petition for leave to appeal to the Illinois Supreme Court. R. 22-5, St. Ct. Rec., Exh. E, Pet.'s PLA and PLA Denial Order, at 5. Citing the Sixth, Eighth, and Fourteenth Amendments, Scott's petition advanced claims of ineffective assistance of trial counsel, ineffective assistance of appellate

4

counsel, and violations of Due Process and Compulsory Process. *Id.* at 5-6. On May 30, 2012, the Illinois Supreme Court denied Scott's petition. *Id.* at 15. Scott then petitioned for a writ of certiorari, which the United States Supreme Court denied on January 7, 2013. *Scott v. Illinois*, 568 U.S. 1097 (2013).

## 2. Postconviction Proceedings

### a. Circuit Court

In September 2011, before filing his first petition for leave to appeal to the Illinois Supreme Court, Scott filed a *pro se* motion for injunctive relief with the state trial court. R. 22-19, St. Ct. Rec., Exh. S, Inj. Relief Common Law Record at 13-19. That court denied the motion the following month, October 2011, characterizing it as a petition for postconviction relief and finding it "frivolous and patently without merit." *Id.* at 77-78; Postconviction Common Law Record at 90-91.

On February 7, 2012 (still before filing a petition for leave to appeal to the Illinois Supreme Court), Scott filed a separate *pro se* motion challenging the indictment. Inj. Relief Common Law Record at 23-28. This motion claimed that the indictment was invalid because it lacked the signatures of eight grand jurors and was never properly signed, sealed, and delivered. *Id.* at 26. On March 15, 2012, the state court denied the motion. *Id.* at 46, 84. Scott then asserted that he had withdrawn the challenge to the indictment, so the state court vacated its denial of the motion. *Id.* at 47-48, 87.

5

In June 2013, Scott filed another *pro se* petition for postconviction relief with the state trial court.³ Postconviction Common Law Record at 46-47. In this particular petition, which forms the basis of the federal habeas petition, Scott asserted nine claims for relief under the Illinois and United States Constitutions: (1) the state court should not have characterized the earlier petition for injunctive relief as a postconviction petition; (2) ineffective assistance of counsel during the plea discussions; (3) ineffective assistance of counsel in presenting an alibi defense and interviewing witnesses; (4) ineffective assistance of counsel in failing to impeach state witnesses; (5) ineffective assistance of counsel in failing to call defense witnesses and present a reasonable probability of actual innocence; (6) prosecutorial misconduct in fraudulently securing a conviction through perjured testimony; (7) ineffective assistance of counsel in failing to subpoena alibi witnesses; (8) ineffective assistance of counsel in allowing Scott to be prosecuted for a greater offense than was required; and (9) ineffective assistance of appellate counsel for failing to argue claims of trial counsel's ineffective assistance. *Id.* at 49-52. In support of the petition, Scott attached affidavits by Brandon Lewis and Celeste Radcliffe. *Id.* at 94-95.

A few weeks after the petition's filing, the state court accepted Scott's argument that the court had mischaracterized the earlier request for injunctive relief as a request for postconviction relief, so the state court deemed this petition Scott's first *pro se* postconviction petition. R. 22-17, St. Ct. Rec., Exh. Q, Postconviction Report of

---

³In May 2012, Scott filed yet another *pro se* petition for injunctive relief, Inj. Relief Common Law Record at 51-56, which was denied, *id.* at 58, 90. The appeal of that denial was unsuccessful. R. 22-18, St. Ct. Rec., Exh. R, Inj. Relief Appeal Summary Order ¶ 6-7.

6

Proceedings, at 2-3. The court then denied the petition, but without prejudice, allowing Scott to supplement the petition with affidavits of alibi witnesses. *Id.* at 3. Believing the court must have missed the affidavits that he had previously attached, on August 7, 2013, Scott asked the state court to appoint counsel and reconsider his postconviction petition, again attaching the Lewis and Radcliffe affidavits. Postconviction Common Law Record at 111-14. On August 15, 2013, the state court docketed Scott's postconviction petition and appointed a public defender. Postconviction Report of Proceedings at 5-6.

Eventually, in October 2014, the public defender filed an additional affidavit from Willie Scott supporting Scott's claim regarding the purported plea offer. Postconviction Report of Proceedings at 37; Postconviction Common Law Record at 138-40. The State filed a motion to dismiss, and the court heard arguments. Postconviction Report of Proceedings at 41-42; Postconviction Common Law Record at 143-60. Scott's counsel presented arguments on the two claims of ineffective assistance of counsel. Postconviction Report of Proceedings at 42-52. After hearing arguments, the judge granted the State's motion to dismiss without a third-stage evidentiary hearing (that is, one with in-person witness testimony). *Id.* at 51-52.

### b. Illinois Appellate Court

Scott appealed the denial of postconviction relief; on appeal, he was represented by the State Appellate Defender. R. 22-6, St. Ct. Rec., Exh. F, Pet.'s Postconviction Br., at 43. In the appeal, Scott presented his two claims of ineffective assistance of counsel and argued that "the circuit court erred when it resolved Scott's

7

petition by disputing his factual assertions, even though they were not rebutted by the record, and by improperly relying on matters outside the record." *Id.* at 5, 22. On these grounds, Scott asked the appeals court to remand for a third-stage evidentiary hearing. *Id.* at 33.

In December 2017, the Illinois Appellate Court affirmed the judgment of the trial court, holding that the dismissal was proper because Scott had "failed to make a substantial showing of ineffective assistance of counsel" in both the plea context and the investigation of witnesses. R. 22-10, St. Ct. Rec., Exh. J, Postconviction Appeal Order, ¶ 1, 4. Still represented by the State Appellate Defender, Scott filed an unsuccessful petition for rehearing. R. 22-11, St. Ct. Rec., Exh. K, Pet.'s Pet. for Rehearing; R. 22-12, St. Ct. Rec., Exh. L, Pet.'s Postconviction PLA and PLA Denial Order, at 41.

### c. Illinois Supreme Court

The next step was a petition for leave to appeal with the Illinois Supreme Court; here, again, Scott was represented by the State Appellate Defenders. Pet.'s Postconviction PLA and PLA Denial Order at 42. Scott asked the Illinois Supreme Court to resolve how lower courts should apply the legal standards set forth in *Missouri v. Frye*, *Lafler v. Cooper*, and *People v. Hale* at the second stage of postconviction proceedings. *Id.* at 4. Scott argued that the Illinois Appellate Court had held him to a more stringent legal standard than was necessary in reviewing his claims of ineffective assistance of counsel in the plea context. *Id.* at 17. On May 30, 2018, the Illinois Supreme Court denied Scott's petition. *Id.* at 1. Less than a month later, again

8

with the assistance of the State Appellate Defender, Scott filed a motion seeking leave to file a reconsideration motion. *Id.* at 43, 48. The Illinois Supreme Court denied that motion on July 18, 2018. *Id.* at 56.

### 3. Federal Habeas Petition

Around three months after the Illinois Supreme Court denied Scott's motion for reconsideration, Pet.'s Postconviction PLA and PLA Denial Order at 56, Scott filed this federal habeas petition. R. 1, Habeas Pet. The petition asserts three claims for relief. *Id.* at 5-6. First, Scott claims that trial counsel failed to "tell him about mandator[y] consecutive sentencing" and the "minimum and maximum sentences he could receive after trial" when they were discussing whether Scott should accept a plea offer. *Id.* at 5. Next, Scott claims that trial counsel failed to investigate and present witness Brandon Lewis, "who would have testified that he witnessed the shooting." *Id.* Finally, Scott claims that the state trial court erred when resolving his petition for postconviction relief by "disputing his factual assertions, even though they were not rebutted by the record and by improperly relying on matters outside the record." *Id.* at 6.

## II. Analysis

### A. Exhaustion of Remedies

Federal courts may only consider habeas petitions from state prisoners that allege violations of the "Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), and state prisoners must first exhaust state remedies before federal courts may consider their claims. 28 U.S.C. § 2254(b)(1)(A); *see Cullen v. Pinholster*,

9

563 U.S. 170, 181 (2011). The "exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," so a federal habeas petition cannot be granted unless the state prisoner has invoked "one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (cleaned up).[4] "In Illinois, this means that a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *O'Sullivan*, 526 U.S. at 842-46). This applies not only on direct appeal, but also on collateral review, including postconviction proceedings. *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999). So "[i]f a habeas petitioner has not exhausted a claim, and complete exhaustion is no longer available, the claim is procedurally defaulted." *Guest* at 930. (cleaned up). And "a federal court may not review federal claims that were procedurally defaulted in state court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (cleaned up). But if the petitioner's claims have not been defaulted, or if a default can be excused, then a federal court may consider the merits of his habeas claims.

As the State points out—and Scott concedes—two of the petition's claims are procedurally defaulted. R. 21, State's Resp. at 5; Habeas Pet. at 6. Those two are the ineffective-assistance claim for failing to investigate witnesses and the state trial

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaned Up Quotations*, 18 JOURNAL OF APPELLATE PRACTICE AND PROCESS 143 (2017).

10

court's purported error in failing to hold an evidentiary hearing. Although Scott presented those two claims to the Illinois Appellate Court, Pet.'s Postconviction Br., Scott did *not* ask the Illinois Supreme Court to consider them in his petition for leave to appeal. Pet.'s Postconviction PLA and PLA Denial Order at 13-18. Worse, if a claim is not exhausted, "and complete exhaustion is no longer available, the claim is procedurally defaulted." *Guest*, 474 F.3d at 930 (citing *O'Sullivan*, 526 U.S. at 842-46) (cleaned up). In Illinois, a petition for leave to appeal must be filed within 35 days of the Illinois Appellate Court's denial of a rehearing. Ill. S. Ct. R. 315(b)(1)-(2); *see Griffith v. Rednour*, 614 F.3d 328, 329 (7th Cir. 2010). The Illinois Appellate Court denied Scott's petition for a rehearing on January 26, 2018, Pet.'s Postconviction PLA and PLA Denial Order at 41, so obviously those 35 days have long since passed. Because Scott can no longer exhaust those two claims, they are procedurally defaulted, and "a federal court may not review federal claims that were procedurally defaulted in state court." *Davila*, 137 S. Ct. at 2064 (cleaned up).

A habeas petitioner nonetheless may overcome procedural default either by demonstrating cause for the default and prejudice from the alleged constitutional violation, *Davila*, 137 S. Ct. at 2064-65, or by showing that the federal court's refusal to consider the claim would result in a fundamental miscarriage of justice, *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). Demonstrating "cause" requires showing that the procedural default resulted from "an objective external factor" that "cannot fairly be attributed to" the petitioner. *Davila*, 137 S. Ct. at 2065 (cleaned up). And

11

demonstrating a "miscarriage of justice" requires "a credible showing of actual innocence." *McQuiggin*, 569 U.S. at 392.

In the federal habeas petition, Scott does not make any showing of actual innocence, but he does offer three grounds for his failure to present these claims to the Illinois Supreme Court. Habeas Pet. at 6. First, Scott claims that he had "deadline issues." *Id.* Next, Scott says that he had trouble getting help from Legal Aid. *Id.* Finally, Scott suggests that the closure of the correctional facility's law library for a month had something to do with it. *Id.* Unfortunately, these grounds do not hold water.

The vague assertion of "deadline issues" fails to specify, by itself, what was beyond Scott's control that caused his procedural default. Scott more specifically (though barely) argues that he had problems accessing Legal Aid. In an ideal world, there would be generally limitless access to representation. But there "is no right to counsel in postconviction proceedings," *Garza v. Idaho*, 139 S. Ct. 738, 749 (2019), so a lack of access to resources like Legal Aid does not excuse a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991) (holding that ineffective assistance of counsel on collateral appeal could not excuse a procedural default).[5] Indeed, in Scott's case, any lack of access to Legal Aid is even less convincing because Scott actually had the assistance of appointed counsel in crafting the petition for leave to

---

[5]The Supreme Court has allowed a narrow exception to this principle when state law does not allow the prisoner to raise the claim on *direct* appeal, *Martinez v. Ryan*, 566 U.S. 1, 9 (2012), but the Court has declined to further extend that exception, *Davila v. Davis*, 137 S. Ct. 2058, 2062-63 (2017), and nothing else prevented Scott from raising these claims in the petition for leave to appeal (indeed, he presented them to the Illinois Appellate Court).

appeal. Pet.'s Postconviction PLA and PLA Denial Order. Just so with Scott's complaint that the law library was closed: he had appointed counsel. It is true that courts have, under certain circumstances, found the inability to access a prison law library to be sufficient cause to overcome a procedural default. *See Johnson v. Foster*, 786 F.3d 501, 506 (7th Cir. 2015); *Watson v. New Mexico*, 45 F.3d 385, 388 (10th Cir. 1995) (entertaining the possibility that an inadequate prison law library might excuse a default). But here, Scott had appointed counsel when writing the petition for leave to appeal. Plus, there is no reason to think that limited access to the law library impeded Scott's ability to present these claims to the Illinois Supreme Court, because he had already raised them to the Illinois Appellate Court. In sum, none of these reasons suggest that any external factors caused the procedural defaults, so this Court cannot review these claims.

This Court can, however, review Scott's other claim of ineffective assistance of counsel during plea discussions. Scott did present this claim to the Illinois Supreme Court. Pet.'s Postconviction PLA and PLA Denial Order. So it is time to move on to the merits of that claim.

### B. Ineffective Assistance in Plea Discussions

To win on the ineffective-assistance claim, Scott must show that the state court's decision was contrary to, or unreasonably applied, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court's decision is "contrary to" clearly established Supreme Court law "if it applies a rule that contradicts the

13

governing law set forth in" Supreme Court cases "or if it confronts a set of facts that is materially indistinguishable" from those in a Supreme Court case "but reaches a different result." *Id.* (cleaned up). And to qualify for relief based on an "unreasonable application" of law, the petitioner must show that the "state court identified the correct" legal principles but applied them to the facts in a way that was "not only incorrect or erroneous but objectively unreasonable." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (cleaned up). "Even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable," and a prisoner bears the burden of showing that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (cleaned up). Appropriate deference must be given to the state court's decision, *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018), and "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.

The first step is setting forth the correct legal standards for evaluating a claim of ineffective assistance of counsel. Under the Sixth Amendment, criminal defendants have the right to effective assistance of counsel, *Garza*, 139 S. Ct. at 743, in both federal and state court, *Gideon v. Wainwright*, 372 U.S. 335, 342 (1963). This protection extends to assistance during plea negotiations. *Missouri v. Frye*, 566 U.S. 134, 145 (2012). To establish ineffective assistance of counsel, a petitioner "must prove (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that any such deficiency was prejudicial." *Garza*, 139 S. Ct. at 744 (quoting

14

*Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984)) (cleaned up). If the petitioner cannot show prejudice, then a court may end its inquiry there. *Strickland*, 466 U.S. at 697. In order to satisfying the prejudice requirement, the petitioner must "undermine confidence in the outcome" of the trial proceedings by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (cleaned up). In the plea context, this means demonstrating a reasonable probability that (1) the defendant would have taken the plea offer; (2) the state court would have accepted the deal; and (3) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147; *Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012).

The Illinois Appellate Court correctly identified these legal standards, Postconviction Appeal Order ¶¶ 25-26, 36, so the remaining question is whether the state court unreasonably applied these standards when considering Scott's claim.[6] To answer this question, a federal habeas court must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims" and "give appropriate deference to that decision." *Wilson*, 138 S. Ct. at 1191-92 (cleaned up).

Here, the Illinois Appellate Court thoroughly reviewed the facts in the record on the purported plea discussions. Postconviction Appeal Order ¶¶ 28, 31, 34. As the

---

[6]When considering whether state court decisions were reasonable, state court findings of fact are taken to be correct unless the petitioner rebuts them with clear and convincing evidence, 28 U.S.C. § 2254(e)(1); *Julian v. Bartley*, 495 F.3d 487, 492 (7th Cir. 2007).

15

appeals court correctly noted, there is no evidence in the record—aside from Scott's assertions—that there ever was a plea offer. *Id.* ¶¶ 32-34. Still, the appeals court went further and assumed, for the sake of argument, that a plea offer did exist. *Id.* ¶¶ 35, 37. Then, applying the Supreme Court's three-part prejudice test to the facts, the Illinois Appellate Court held that Scott could not show prejudice. *Id.* ¶¶ 37-40. Taking the last element first, the appeals court acknowledged the obvious: if there really was a plea offer of 12 years, Habeas Pet. at 19, then certainly "the end result of the criminal process would have been more favorable," *Frye*, 566 U.S. at 147, because Scott was ultimately sentenced to 30 years imprisonment. Postconviction Appeal Order ¶ 39.

But the appeals court rejected Scott's contention on the other two elements. For one, the Illinois Appellate Court held that there was a reasonable probability that the trial court would *not* have accepted a 12-year plea deal. Postconviction Appeal Order ¶ 39. In arriving at this conclusion, the appeals court considered the severity of Scott's ultimate sentence and the degree to which the trial court was affected by the severity of Johnson's injuries. *Id.* The reports of the trial proceedings support these conclusions. As the trial court noted at sentencing, "what happened to Lloyd Johnson … was problematic," and "now Lloyd's life is destroyed." Trial Report, Vol. 2 at 79-80. In arriving at a sentence of 30 years, the trial court "considered the consequences" of Scott's acts, "particularly as to Lloyd Johnson," and emphasized that Johnson's paralysis was significant in the sentencing decision. *Id.* at 80, 82. Likewise, at the second-stage postconviction hearing, the judge referred to Johnson's injuries

16

as "egregious and life changing." Postconviction Report of Proceedings at 51. Given these facts in aggravation of the sentence, it was not unreasonable for the Illinois Appellate Court to conclude that the trial court may very well have rejected a plea deal for the mandatory minimum.

Even assuming that the trial court would have accepted the plea deal, Scott would still need to show that *he himself* would have accepted the offer. *Frye*, 566 U.S. at 147. Here, too, Scott runs into trouble. To establish that he would have accepted the plea offer, Scott "must show that his counsel's advice was a decisive factor in his decision to reject the State's plea offer." *Watson v. Anglin*, 560 F.3d 687, 691 (7th Cir. 2009) (cleaned up). Scott contends that his trial counsel failed to disclose mandatory consecutive sentencing requirements and the correct minimum and maximum sentences to him. Habeas Pet. at 5. But Scott does not actually say that those failures were decisive in his alleged decision to reject that offer. Instead, Scott says only that he "*probably* would have taken" the offer and that he "*probably* would seriously consider it" if he had another opportunity. Postconviction Common Law Record at 96 (emphases added). It undermines the requisite showing—that Scott *would* have taken the plea offer—when his own affidavit is so equivocal. As the Illinois Appellate Court reasonably reasoned, Scott's "equivocal affidavits and the murder charges he would have faced if he pled guilty and Johnson died compel the conclusion that defendant's decision to plead not guilty was based on other considerations besides counsel's alleged deficient advice" in plea discussions. Postconviction Appeal Order ¶ 38. And it does not help his case that Scott has always maintained his outright innocence.

17

At trial, Scott testified that he was playing basketball when the shooting occurred and that he was not the shooter. Trial Report, Vol. 2 at 18, 23-24. And in the postconviction proceedings, Scott submitted the affidavit of Brandon Lewis to support his contention that he was not the shooter. Postconviction Common Law Record at 94. As the Seventh Circuit has noted, even properly advised defendants "in the face of a favorable plea offer and unfavorable facts … might still advance to trial, swearing they are innocent and thinking they can succeed against the state." *Quintana v. Chandler*, 723 F.3d 849, 856 (7th Cir. 2013) (finding that the state court had reasonably determined that a defendant who maintained his innocence was not prejudiced by counsel's deficiencies in the plea process) (cleaned up). In Scott's case, the evidence in the record does not support the showing that Scott needs to make—that the state courts unreasonably rejected the contention that he would have accepted the plea deal if he had been thoroughly informed about the consequences of going to trial. With this claim failing on the prejudice element, the Court need not decide whether Scott's trial counsel rendered deficient performance.

### C. Certificate of Appealability

In order to appeal a denial of a habeas petition, a petitioner must first obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); *Jennings v. Stephens*, 574 U.S. 271, 275 (2015). A certificate may issue only when the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Jennings*, 574 U.S. at 282. The substantial showing "standard is met when reasonable jurists could debate whether … the petition should have been resolved in a different

18

manner." *Welch v. United States*, 136 S. Ct. 1257, 1263 (2016) (cleaned up). For the reasons discussed above, Scott has not made that showing. Two claims are clearly procedurally defaulted in light of their omission from the petition for leave to appeal. And the Illinois Appellate Court's rejection of the ineffective-assistance claim as to the plea discussions quite plainly cannot be deemed an unreasonable application of federal law. No certificate of appealability shall issue from this Court.

### III. Conclusion

The habeas petition is denied, and the Court declines to issue a certificate of appealability. The tracking status hearing of December 11, 2020 is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 16, 2020